William GOCHIS, et al., Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
Defendant.

Civ. A. No. 90–12553–WGY.

United States District Court,
D. Massachusetts.

June 14, 1995.

Nelson P. Lovins, Judy A.S. Metcalf, Lovins & Metcalf, Woburn, MA, for plaintiffs.

Ann M. O'Neill, Murphy, Hesse, Toomey & Lehane, Quincy, MA, James W. Nagle, Goodwin, Proctor & Hoar, Boston, MA, for defendant.

*MEMORANDUM AND ORDER*

WILLIAM G. YOUNG, District Judge.

It has been said that disputes in academia are especially bitter because the stakes are so small.[1] So too with parties to completed litigation skirmishing over the only remaining scraps left on the battlefield: costs.

In this case, the defendant, Allstate Insurance Company ("Allstate"), prevailed on the merits and sought to recover its costs. After an award of substantially less than the full amount sought and a trip to the First Circuit, Allstate returns to claim the fruits of its victory. Allstate is not, however, entitled to all the reimbursement it seeks.

## I. Background

Seventy-six former insurance sales agents (the "Agents") brought suit in 1990 challenging the compensation policies of their employer, Allstate. Three more agents were added to the plaintiffs' roster in November of 1991. The Agents claimed breaches of their employment contracts and the implied covenant of good faith and fair dealing, as well as violations of the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A. After extensive discovery, Allstate filed two summary judgment motions, prevailed on both, and judgment entered for Allstate on all claims. The Agents' appeal was dismissed on procedural grounds, but the First Circuit noted that it would have affirmed the decision below on the merits. *Gochis v. Allstate Ins. Co.*, 16 F.3d 12, 16 n. 8 (1st Cir.1994).

Allstate then filed a Bill of Costs in the amount of $25,499.01, the largest elements of which were $19,866.85 in deposition-related expenses and $4,859.86 in photocopying charges.[2] Allstate sought transcription fees and delivery charges for each of forty-nine deposition transcripts (involving thirty deponents) and the copying costs charged to Allstate for documents produced by the Agents. The Courtroom Deputy Clerk, pursuant to the authority granted her by 28 U.S.C. § 1920, disallowed the deposition and copying costs, but allowed the remainder of the Bill in the amount of $772.30, which the Agents paid. This Court agreed on the ground that the case had been decided on a point of law. Unsatisfied, Allstate appealed. The First Circuit vacated the judgment and remanded for reconsideration as to whether Allstate was entitled to a greater reimbursement. The court of appeals disagreed with the conclusion that Allstate's victory was predicated on a single point of law, but did not reverse the judgment because "if some, but not all, of the depositions and copies have proven clearly unnecessary, irrelevant, or cumulative, we lack the exposure and vantage point of the trial judge to make such a discriminating determination." *Gochis v. Allstate Ins. Co.*, 43 F.3d 1456 (1st Cir.1994) (per curiam).

Pursuant to the First Circuit's order, Allstate then filed a Supplementary Bill of

---

1. Attributed to the English novelist, philosopher, and physicist C.P. Snow. *See Skulls and Numbskulls*, ECONOMIST, Nov. 21, 1992, at 103; John Mixon & Gordon Otto, *Symposium: Applying Quality Management Concepts to the Law*, 43 EMORY L.J. 393, 482 (1994).

2. The Bill of Costs also sought reimbursement for clerk fees ($172.50); court reporter fees ($113); docket fees ($137.50); and costs of appeal ($349.30).

Costs (the "Supplementary Bill") requiring this Court to make such a "discriminating determination." Allstate now seeks taxation of the deposition and copying expenses earlier denied, as well as $1,955.80 for its successful appeal, for a total of $26,682.51. The Court hereby allows in part and denies in part the Supplementary Bill for the reasons set forth below.

## II. Discussion

### A. The Legal Standard

■ The assessment ("taxation") of costs is governed by the tandem operation of a federal statute, 28 U.S.C. section 1920,[3] and Rule 54(d)(1) of the Federal Rules of Civil Procedure, which provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Section 1920 supplies the proper definition of the term "costs" in the rule and restricts the district court's ability to assess costs beyond those listed in the statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *In re San Juan Dupont Plaza Hotel Fire Lit.*, 994 F.2d 956, 962 (1st Cir.1993). The only discretion retained by the court is the power "to decline to tax, as costs, the items enumerated in § 1920." *Crawford*, 482 U.S. at 442, 107 S.Ct. at 2497. The awarding of costs is not mandatory and is left to the sound discretion of the district court. *Heddinger v. Ashford Memorial Community Hosp.*, 734 F.2d 81, 86 (1st Cir.1984).

■ The precise contours of the power to decline to tax costs have yet to be determined in this circuit. *See San Juan*, 994 F.2d at 963 (First Circuit "has been more muted both about a district judge's duty to explain a denial of costs and about the reasons that may warrant such a denial."). Where the basis for the denial of costs is "readily apparent," no explanation is required, but in other cases, the district court is obligated to make "some statement" justifying its denial of costs. *Id.* Although other appellate courts have detailed broad categories of circumstances justifying the denial of costs, see, e.g., *White & White, Inc. v. American Hospital Supply Corp.*, 786 F.2d 728, 730 (6th Cir.1986) (denial of costs proper where taxable expenditures by prevailing party are "unnecessary or unreasonably large"; where prevailing party unnecessarily prolonged the trial or injected unmeritorious issues; where recovery is so insignificant that the judgment amounts to a victory for the losing party; and where case is "close and difficult"); *Burroughs v. Hills*, 741 F.2d 1525, 1542 (7th Cir.1984), *cert. denied sub nom. Burroughs v. Pierce*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985) (denial of costs proper only where losing party indigent or prevailing party guilty of "some fault, misconduct, default, or other action worthy of penalty"), such is not the case here. Rather, a district court in the First Circuit has long possessed broad discretion to deny costs as long as it "offers a sound reason" for doing so. *San Juan*, 994 F.2d at 964; *Leeds & Northrup Co. v. Doble Eng'g Co.*, 41 F.Supp. 951, 951–52 (D.Mass.1941) (Brewster, J.). The Court is, of course, guided further by the views expressed by the Court of Appeals in its remand of this case.

■ Allstate characterizes the issues now before the Court as 1) whether the discovery was "reasonably appropriate" when taken, and 2) whether its conduct warranted the "penalty" of disallowance. Both are off the mark. The First Circuit explicitly rejected the premise of the first proposition, that the costs of reasonably appropriate discovery are always recoverable, when it held that the costs of depositions "introduced in evidence or used at trial" may be taxed to the losing

---

**3.** The statute provides:

A judge or clerk ... may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920 (West 1994).

party. *See Templeman v. Chris Craft Corp.,* 770 F.2d 245, 249 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985) (declining to follow cases generally allowing recovery of costs of depositions "shown to have been reasonably necessary in light of the particular situation at the time it was taken"); *Walters v. President and Fellows of Harvard College,* 692 F.Supp. 1440, 1442 (D.Mass.1988) (Garrity, J.). Thus, the district court *may* allow as taxable depositions costs which are appropriate and reasonably necessary, but it may decline to do so for sound, articulated reasons. *San Juan,* 994 F.2d at 963, 964; *Rodriguez–Garcia v. Davila,* 904 F.2d 90, 100 (1st Cir.1990) (costs allowable if "reasonably necessary to the maintenance of the action").

■■■ Where a court declines to tax all theoretically recoverable costs, the relevant inquiry is the *use* to which the discovery is put once obtained and whether the costs were necessary to resolution of the case. *See Emerson v. National Cylinder Gas Co.,* 147 F.Supp. 543, 545 (D.Mass.1957), *aff'd,* 251 F.2d 152 (1st Cir.1958) (test is the "extent to which it was reasonable to go to furnish 'real assistance' to the court"). All other costs are "preparatory," and are not automatically recoverable. *See Walters,* 692 F.Supp. at 1442–43. While this may appear to result unfairly in the Court's application of twenty-twenty hindsight to the conduct of the parties, and then "punishing" the prevailing party for discovery which does not prove essential to the result by disallowing its cost, that is the regime under which we operate.[4] There is thus no requirement that the prevailing party engage in misconduct in order for the Court to disallow certain of its otherwise recoverable costs. *See San Juan,* 994 F.2d at 963.

### B. Application to the Facts

Although this case involved seventy-nine named plaintiffs and was not certified as a class action, the Agents broke down neatly into two discrete categories. The first group consisted of seventy-seven agents, all of whom were employed by Allstate pursuant to an Agency Compensation Agreement requiring them to work exclusively for Allstate, setting the compensation rates, and including a two-year non-competition period following the termination of employment. These agents claimed generally that they were "owners" of business generated in "assigned risk" situations. *See Gotchis* (sic) *v. Allstate Ins. Co.,* No. 90–12553, slip op. at 2, 1993 WL 795440 (D.Mass. Feb. 19, 1993). The second group consisted of two agents, Gregory Pope ("Pope") and Curt Everett ("Everett"), each of whom had executed an "R1500 Agent Employment Agreement," allegedly distinguishing their claims from those of their brethren.

In managing the case, the Court ordered that Allstate first file a motion for summary judgment as to the first five named plaintiffs: William Gochis ("Gochis"), Frank Antonuccio ("Antonuccio"), Michael Argeros ("Argeros"), James Ambrose ("Ambrose"), and John Arnberg ("Arnberg"). Allstate did so, and prevailed. Allstate then moved, pursuant to the Court's scheduling order, for summary judgment on the claims of the remaining seventy-four plaintiffs. The Court had instructed the Agents that in order to prevent summary judgment against them on the remaining claims, they were required to "explain[ ] each reason why such claims of other plaintiffs are dissimilar or why summary judgment otherwise should not be entered with respect to such claims." The Agents conceded that seventy-two of the seventy-four remaining agents' claims were similar to those of the first five, and merely opposed entry of summary judgment against Pope and Everett. At a hearing on April 8, 1993, the Court granted Allstate's motion for summary judgment as to all remaining plaintiffs.

### 1. Deposition Expenses

■■■ Fees of the court reporter for all or any part of a "stenographic transcript necessarily obtained for use in the case" is taxable. 28 U.S.C.A. § 1920(2) (West 1994). The cost of taking and transcribing depositions falls within this subsection. *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 249 (1st Cir.), *cert.*

---

4. The First Circuit has acknowledged as much in this case by its use of the phrase "have *proven* clearly unnecessary, irrelevant, or cumulative

..." *Gochis v. Allstate Ins. Co.,* No. 94–1773, slip op. at 2, 1994 WL 697285 (1st Cir. Dec. 14, 1994) (per curiam) (emphasis supplied).

*denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Allstate now seeks costs for forty-nine deposition transcripts involving thirty deponents. Portions of forty-six of the transcripts were "submitted" to the Court in support of or in opposition to the two motions for summary judgment. While the Court agrees with Allstate that transcripts submitted in connection with successful dispositive motions may be considered "admitted into evidence" and taxable, see 10 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure 2d § 2676, at 341 (1983), the mere fact of citation in a brief does not automatically entitle the prevailing party to costs for those depositions. Allstate's consistent use of multiple citations to depositions and affidavits to support uncontested and often immaterial propositions was simply excessive and unnecessary.[5] Such clutter may appear to bolster the factual underpinnings of Allstate's argument, but adds little to the Court's understanding of the matter.[6] The vast majority of the citations are to the depositions of the first five named plaintiffs, whose claims were representative of seventy-seven of the seventy-nine plaintiffs. The evidence supplied by those five was essential to the Court's decision on the first motion; that of the other deponents was of marginal, if any, utility to the Court. The second motion, as noted, was limited to the claims of Pope and Everett. Therefore, the Court holds, in exercise of its discretion, that Allstate may only recover costs associated with the depositions of the seven plaintiffs the resolution of whose claims disposed of the entire case.[7] The rest have proven clearly unnecessary, irrelevant, and cumulative. *Gochis,* slip op. at 2; *Emerson v. National Cylinder Gas Co.,* 251 F.2d 152, 158 (1st Cir.1958) (no abuse of discretion where district court denied cost of materials which were "repetitious and overdone far beyond the needs of the occasion"); *see also A.A. Fressell v. AT & T Tech., Inc.,* 103 F.R.D. 111, 116, 118 (N.D.Ga.1984) (allowing costs for only two of 16 depositions deemed "necessary" at trial, noting that it would be appropriate to award costs of depositions to party prevailing on summary judgment "when the attorneys can point to the use of the depositions with some particularity" and show how they were "necessary for the court's disposition of the motion"); *Felts v. National Account Sys. Ass'n, Inc.,* 83 F.R.D. 112, 113–14 (N.D.Miss.1979) (deposition costs denied where court found they were not "necessarily obtained for use in the case" but rather in preparation). Allstate's taxable deposition costs total $7,539.30 and break down as follows: Ambrose (two transcripts totalling $1,018.75); Antonuccio (two transcripts

---

**5.** Allstate submitted 13 affidavits and excerpts from 42 transcripts of 23 deponents in support of its first motion for summary judgment. Examples of repetitious and cumbersome string cites abound: six depositions to show the company provided training to agents; three depositions and an affidavit to show the agents were evaluated periodically; two depositions and an affidavit to show the banal point that management emphasized the need to write profitable business; three depositions and an affidavit to show that Allstate generally paid the Agents' expenses; and six depositions and an affidavit to show the Agents received a variety of benefits, including paid holidays and vacations.

**6.** Attempting to demonstrate the absence of genuine issues of material fact, Allstate went so far as to tell the Court that the extensive materials it submitted

anticipate plaintiffs' expected submission of facts which Allstate *believes are immaterial to the current state of the legal principles that govern their claims.* These facts also provide the Court with a *useful context* for understanding the events at issue.

Defendant's Memorandum in Support of First Motion for Summary Judgment at 1 n. 1 (emphasis supplied). Allstate simply cannot have it both ways.

**7.** Contrary to Allstate's assertion, *Papas v. Hanlon,* 849 F.2d 702 (1st Cir.1988) does not stand for the proposition that in "virtually every lawsuit" involving multiple plaintiffs a successful defendant is entitled to the cost of deposing each plaintiff. In *Papas,* the district court taxed deposition costs where the plaintiffs had failed to show up for their depositions. Although the depositions were, of course, never put in evidence, the First Circuit concluded the trial court had not abused its discretion in awarding costs. The court noted that "plaintiffs' depositions are reasonable and necessary steps in the preparation of a defendant's case." *Id.* at 704 (citing *In re Puerto Rico Elec. Power Auth.,* 687 F.2d 501, 507 [1st Cir.1982] ). *Papas* thus holds that it is within the discretion of the district court to tax, or not to tax, such costs even if the depositions are not submitted in evidence.

totalling $938.95); Argeros (three transcripts totalling $933.90); Arnberg (two transcripts totalling $933.25); Gochis (four transcripts totalling $2,496.35); Everett (one transcript at $600.50); and Pope (one transcript at $617.60).

### 2. Photocopying Charges

Fees for "exemplification and copies of papers necessarily obtained for use in the case" are taxable. 28 U.S.C.A. § 1920(4) (West 1994). Allstate seeks reimbursement only for the amount it was charged by the Agents for the production of documents, generously eschewing payment for copies made internally in preparation of its defense. The company argues that it was ordinary, necessary, prudent and good practice for it to request, review and copy the Agents' documents; the Court does not disagree. Allstate goes on to say, however, that because these documents were studied by its counsel, referred to over months of discovery, and many used in depositions and submitted on summary judgment, they were "necessarily obtained" and their cost must be taxed to the Agents. Allstate gives but one vague example involving documents produced by one of the Agents, William Flanagan, to demonstrate how critical the documents were to Allstate's success. On the other hand, the Agents argue that most of the documents used by Allstate on summary judgment were documents already in the company's possession and which were not produced by the Agents. The Agents say further that Allstate unnecessarily obtained discovery on all seventy-nine plaintiffs, instead of the five principals whose claims were the focus of the first motion, and should not be rewarded for its failure to limit its discovery requests and present an efficient defense to the Court.

The Court agrees with the Agents. Once again, Allstate improperly blurs the distinction between case preparation and case resolution. Most, if not all, of the documents upon which the motions for summary judgment rested were Allstate's own documents, and many of the documents obtained were used in depositions the costs of which the Court has already held are not taxable. Therefore, even if the documents obtained were reasonably appropriate to Allstate's defense, the Court declines to tax such costs in exercise of its discretion.

### 3. Costs of Appeal

The Agents concede that Allstate is entitled to the costs of its successful appeal in the amount of $1,955.80—$1,850.80 allowed by the mandate of the Court of Appeals plus the $105 filing fee. The Court therefore allows those costs.

### III. Conclusion

Allstate's Supplementary Bill of Costs is allowed to the following extent: $7,539.30 for deposition transcripts necessarily obtained for use in the case pursuant to 28 U.S.C. section 1920(2) and appeal costs in the amount of $1,955.80 pursuant to Rule 39 of the Federal Rules of Appellate Procedure. The Supplementary Bill is denied in all other respects.